**STATE of Utah, Plaintiff and Appellee,**

v.

**Juan Dios CANTU, Defendant and Appellant.**

No. 880155.

Supreme Court of Utah.

July 28, 1989.

Lisa J. Remal and Joan C. Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson and Dan R. Larsen, Salt Lake City, for plaintiff and appellee.

DURHAM, Justice:

This case is before us for a second time. The first appeal resulted in remand to the trial court to determine whether the State's peremptory challenge of a juror was made in a discriminatory manner. *State v. Cantu*, 750 P.2d 591 (Utah 1988). The trial court, after hearing, found that the peremptory challenge was not exercised in a discriminatory manner. We reverse and remand for a new trial.

During the initial trial of the case, defense counsel moved to quash the jury panel on the ground that the jury selection procedure did not insure representation of a fair cross-section of the community. In the course of the hearing on the motion, the court, the prosecutor, and defense counsel agreed to supplement the jury panel with two persons randomly chosen from the master jury list because of their minority surnames. All parties agreed that the additional jurors would include one person with a Hispanic surname and one other person with a minority surname. Thereafter, defense counsel successfully challenged for cause one of the new persons selected, and the State exercised a peremptory challenge to eliminate the other. Defense counsel objected to this peremptory challenge on the ground that it was racially motivated and thus violated defendant's right to equal protection. However, the trial judge ruled that no reason must be given for a peremptory challenge and denied defendant's motion for a mistrial.

Following remand by this Court, the trial court held a hearing at which the prosecutor testified that his exercise of the peremptory challenge in question was not racially motivated. He explained that he was motivated instead by strong feelings against defense counsel resulting from their heated disagreement about the propriety of handpicking supplemental prospective jurors from the master jury list. The trial court ruled that the challenge was proper.

The use of a peremptory challenge solely on the basis of race violates equal protection. The party attacking a peremptory challenge must establish a prima facie case. *Id.* at 595 (citing *Batson v. Kentucky,* 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986)). The burden then shifts to the challenged party to show the existence of a racially neutral reason for the challenge. *Id.* at 595. A determination as to whether the evidence rebuts the prima facie case generally turns on evaluation of witness credibility. *United States v. David,* 844 F.2d 767, 769 (11th Cir.1988). Findings of fact are not set aside unless clearly erroneous. Utah R.Civ.P. 52(c).

■ Although the prosecutor testified at the hearing on remand that his decision to exercise a peremptory challenge was not racially motivated, he also said:

> As I recall, because there were no minority members on the panel, [defense counsel] made a tremendous fuss about the fact, and while that didn't seem to me to be of any significance, she made such a big stink out of it, and we argued back and forth at each other....

When asked his reason for exercising his peremptory challenge, the prosecutor testified:

> [The] exercise of my challenge with respect to Mr. Lopez, was that I figured no matter who defense counsel wanted on there, I didn't want him to [sic].

It is also clear from the record that defense counsel had insisted on the selection of Mr. Lopez because he was Hispanic.

The record thus indicates that the panel was supplemented only with Hispanic jurors and that the prosecutor was aware that race was the key factor in the new juror sitting on the venire panel. The prosecutor struck the juror because defense counsel wanted the juror on the panel, and defense counsel wanted the juror on the panel because of the juror's race. Thus the prosecutor's motivation was connected, albeit indirectly, to the juror's race.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant could establish a violation of equal protection based on the use of a peremptory challenge during the defendant's trial, rather than having to show repeated striking of minorities over a number of cases. The *Batson* Court acknowledged, "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717. Relying on *Batson,* it has been found that an explanation given by a prosecutor for the exercise of a peremptory challenge must be "(1) neutral, (2) related to the case being tried, (3) clear and reasonably specific, and (4) legitimate." *State v. Butler,* 731 S.W.2d 265, 268 (Mo.App.1987).

California courts, for example, require that the issue of group-biased peremptory challenges be raised in a timely manner and that the complaining party make a prima facie case of bias. The elements necessary to such a prima facie case include (1) as complete a record as possible, (2) a showing that persons excluded belong to a cognizable group under the representative cross-section rule, and (3) a showing that there exists "a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." *People v. Wheeler,* 22 Cal.3d 258, 280, 148 Cal.Rptr. 890, 905, 583 P.2d 748, 764 (1978).

The Florida Supreme Court has identified a similar list of factors that may cast doubt upon the legitimacy of a purportedly race-neutral explanation:

> We agree that the presence of one or more of these factors will tend to show that the state's reasons are not actually supported by the record or are an impermissible pretext: (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge

based on reasons equally applicable to juror [sic] who were not challenged.

*State v. Slappy,* 522 So.2d 18, 22 (Fla. 1988); *see Slappy v. State,* 503 So.2d 350 (Fla.App.1987).

In the transcript of the proceedings below, the prosecutor asked no questions during the initial voir dire examination, and when the supplemental jurors were introduced, the prosecutor asked only one question before exercising his first and only peremptory challenge of the entire voir dire process. The question was both desultory and insufficient to establish any specific bias on the part of the jurors. "I don't know if you asked this, Judge. I would ask you to inquire of either of these two folks whether or not any of their friends or families have been similarly charged. I don't know if you did."

■ Once a prima facie case of discriminatory peremptory challenge has been made, the reason given must relate to the juror or the case. The prosecutor's desultory voir dire, uninvolved demeanor, and failure to pursue a studied or deliberate course of questioning regarding specific bias, together with his stated reasons that the challenge was made in anger, are enough to fulfill the requirements of *Batson, Wheeler* and *Slappy. See also People v. Hall,* 35 Cal.3d 161, 197 Cal.Rptr. 71, 74, 672 P.2d 854, 857 (1983) (peremptories must be based on grounds reasonably related to case on trial or for reasons of specific bias); *People v. Fuller,* 136 Cal.App.3d 403, 186 Cal.Rptr. 283, 299 (1982) (relevant indicia of group bias includes "desultory questioning" indicating no intent to impanel members of the minority race); *People v. Johnson,* 22 Cal.3d 296, 148 Cal.Rptr. 915, 916, 583 P.2d 774, 775 (1978) (reason insufficient as a matter of law).

In the case before us today, the prosecutor claimed that the only reason for the peremptory challenge was that he was angry at defense counsel. However, his anger resulted from defense counsel's insistence on the inclusion of the juror because the juror was Hispanic. Thus the fact that the juror was Hispanic was the ultimate predicate for the prosecutor's peremptory challenge. This reason for exclusion of the juror is neither neutral nor legitimate. Therefore, we hold that race was an indirect but significant reason for the peremptory challenge and vacate defendant's conviction. The matter is remanded for a new trial.

ZIMMERMAN, J., and BILLINGS, Court of Appeals Judge, concur.

STEWART, J., does not participate herein; BILLINGS, Court of Appeals Judge, sat.

HALL, Chief Justice (dissenting):

I do not join the Court in its assessment of the facts.

At the hearing conducted pursuant to this Court's remand, the prosecutor testified that his exercise of the peremptory challenge in question was not racially motivated. Rather, he explained that he was motivated by deep feelings against defense counsel engendered by a lengthy and heated exchange between them concerning the propriety of handpicking supplemental prospective jurors from the master jury list on the express basis of race.

In addition to the excerpts of the prosecutor's testimony set forth in the majority opinion, the following excerpt more clearly establishes his motivation in exercising the peremptory challenge:

> *I don't believe that race figured into it at all,* as far as my challenge went. *I think it was part of her* [defense counsel's] *motivation, but, it was not part of mine.*

(Emphasis added.)

The use of a peremptory challenge solely on the basis of race violates equal protection.[1] One who attacks a peremptory challenge must establish a prima facie case of purposeful discrimination; then the burden shifts to show the existence of a racially neutral reason for the challenge.[2] The is-

---

1. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).

2. *State v. Cantu,* 750 P.2d 591, 595 (Utah 1988).

sue as to whether the evidence rebuts the prima facie case generally turns on the evaluation of the prosecutor's credibility.[3] Hence, a reviewing court need give great deference to the findings of the trial court.[4] In addition, findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.[5] Application of these standards in the instant case prompts the affirmance of the trial court's decision.

Based upon and supported by the evidence presented, the trial court concluded:

[T]he prosecutor and defense counsel were in heated arguments over the selection of any further jurors to supplement the jury panel that was already in existence.

There is nothing to rebut the fact that the prosecutor's selection was on the basis of his contempt and ire, with the prosecutor not allowing any additional jurors that was [sic] selected.

. . . .

... *[I]t does not appear that the challenges is [sic] made on the count [sic] of race, but made for reasons other than race and specifically the contention between the two counsels and that there does not appear to be any reason to show that there was any pattern existing that would show that minorities were excluded from the jury, and that the peremptory challenges were exercised in order to strike minorities from the jury panel.*

(Emphasis added.)

It is of note that the wholly unorthodox procedure followed in this case in handpicking additional prospective jurors on the basis of race, rather than selecting them at random,[6] would appear to be error. However, the issue was not preserved on this or the prior appeal. Nevertheless, the fact that additional jurors were so selected graphically demonstrates the tension that existed at trial which erupted into the heated argument engaged in by counsel. Also, it adds credence to the testimony offered in explanation of a racially neutral peremptory challenge, which in turn supports the findings and conclusions of the trial court.

I would affirm the judgment of the trial court.

HOWE, Associate C.J., concurs in the dissenting opinion of HALL, C.J.

---

**3.** *United States v. David,* 844 F.2d 767, 769 (11th Cir.1988).

**4.** *Id.*

**5.** Utah R.Civ.P. 52(a).

**6.** As required by Utah Code Ann. § 78–46–13 (Supp.1985) (amended 1986).